```
                 UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF LOUISIANA

LEE EDMISON JR. AND ROSEMARY EDMISON            CIVIL ACTION

V.                                              NO. 15-1521

CAESARS ENTERTAINMENT COMPANY, INC.
D/B/A HARRAH'S NEW ORLEANS CASINO               SECTION "F"
AND SCHINDLER ELEVATOR CORPORATION
```

<u>ORDER AND REASONS</u>

Before the Court are two motions: 1) Caesars Entertainment Operating Company, Inc. and Jazz Casino Company, LLC's motion for summary judgment; and 2) Schindler Elevator Corporation's motion for summary judgment. For the following reasons, the motions are GRANTED.

**Background**

The plaintiff, Lee Edmison, fell down an escalator at Harrah's Casino in New Orleans on February 12, 2015. He and his wife brought this personal injury lawsuit against Caesars Entertainment, who does business in New Orleans as Harrah's Casino, and Schindler Elevator, the company contracted to maintain the escalator.

At approximately 3:15 a.m., casino video footage shows Lee Edmison stepping onto an escalator going downward toward a tunnel that leads to the casino hotel. Almost immediately after his initial step, Edmison loses his balance. Unable to stabilize himself using the handrails, Edmison leans forward and tumbles head first down the stairs, his body lay limp at the bottom.

1

Edmison's wife and co-plaintiff, Rosemary Edmison, was close behind her husband at the time of the fall. Video footage shows her walking to the escalator alone, waiting a few moments, and then returning to the area from where she came. Lee Edmison then appears ahead of Mrs. Edmison, he staggers as he heads toward the escalator. Mrs. Edmison is several steps behind her husband, she is approaching the escalator as he topples over. She follows her husband down the escalator and kneels next to his motionless body.

An ambulance took Mr. Edmison to the hospital shortly after his fall. A blood test revealed that his blood alcohol content was 0.244, three times Louisiana's legal driving limit.

Mr. Edmison suffered severe injuries from the fall. He spent the following eight days in the hospital in and out of consciousness. His skull was fractured, and he suffered traumatic brain injury. Edmison claims that he lost his sense of taste entirely and that he lost hearing in his left ear significantly. He continues treatment with a neurologist, a speech pathologist, and an ENT. He also suffers from short-term memory loss. He has no recollection of the fall or even arriving in New Orleans from Ohio on the day before.

The parties agree that the escalator was in compliance with the relevant safety codes. It was operating normally at the time of the accident. The video footage shows many others using the escalator in the minutes leading up to the plaintiff's fall. The

only alleged defect is that the escalator lacked certain noncompulsory safety features.

Caesars and Schindler move for summary judgment. Caesars contends that the plaintiffs are unable to establish two essential elements of their claim: 1) that the escalator was unreasonably dangerous; and 2) causation. Caesars maintains that no trier of fact could find that the escalator was unreasonably dangerous because it was code-compliant and defect-free. Moreover, Caesars claims that the cause of Edmison's fall was his alcohol consumption, not a safety failure.

Schindler has a contract with Caesars to perform maintenance and service on Caesar's escalators in casino locations across the country. Schindler contends that the plaintiffs have failed to offer any evidence to show that it breached its duty of reasonable care or that such a breach was the cause of the plaintiff's injuries.

The plaintiffs respond that the cause of Edmison's fall was the escalator's lack of modern safety features. They retained liability expert, Joseph Stabler, who attributes the absence of step demarcation lines, comb plate lighting, handrail motion indicators, and a speed reduction kit as the cause of the plaintiff's injuries. The plaintiffs submit that it is up to the jury to determine whether the escalator was unreasonably dangerous

3

as a result of the outdated safety features. Likewise, they add that causation is also a question for the jury.

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5 Cir. 1992). Rather, he must come forward with competent

evidence, such as affidavits or depositions, to buttress his claim. Id. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible at trial do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5 Cir. 1987); Fed. R. Civ. P. 56(c)(2). Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

## II.

The parties agree that Louisiana law controls. Against Caesars, the plaintiffs' claims arise under Louisiana's premises liability law found in Civil Code articles 2317 and 2322. Against Schindler, the plaintiffs assert a general negligence claim under Louisiana Civil Code article 2315. The Court addresses each in turn.

## III.

Louisiana Civil Code article 2317 provides, "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by . . . the things which we have in our custody." Article 2322 modifies article 2317:

> The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the

5

>     damage could have been prevented by the exercise of
>     reasonable care, and that he failed to exercise such
>     reasonable care.

La. Civ. Code art. 2322.

The Louisiana Supreme Court has molded this Code article into five essential elements to establish a claim against a building owner for damage caused by a dangerous condition: "(1) ownership of the building; (2) the owner knew or, in the exercise of reasonable care, should have known of the ruin or defect; (3) the damage could have been prevented by the exercise of reasonable care; (4) the defendant failed to exercise such reasonable care; and (5) causation." Broussard v. State ex. Rel. Office of State Buildings, 2012-1238 (La. 4/15/13); 113 So. 3d 175, 182-83.

This test is a variation of Louisiana's general negligence tort. Louisiana uses a "duty-risk" analysis in assessing the merits of a negligence claim. Although not explicit in Article 2322, the fundamental questions in the duty-risk analysis are: Was a duty owed? Was the duty breached? Did the breach of duty cause the plaintiff's harm?[1] See id. at 184. The Louisiana Supreme Court explains premises liability law in terms of these fundamental questions. See id.

---

[1] Causation is generally broken down into two distinct elements: cause-in-fact and scope of the risk. See Mathieu v. Imperial Toy Corp., 94-0952 (La. 11/30/94); 646 So. 2d 318, 321-22.

The issue of whether a duty is owed is a question of law to be answered by the Court. Id. at 185. To the contrary, the issue of whether a duty is breached is a question of fact to be answered by the fact-finder. Id. Of course, the fact-finder can only find a breach after the Court establishes that a duty exists. Accordingly, the logical progression of the analysis, particularly at the summary judgment stage, is to determine the legal question of whether a duty is owed and, if so, then examine if material issues of fact exist as to whether the duty was breached. However, Louisiana jurisprudence defies this logic by embedding the legal question of whether a duty is owed into the factual question of whether the duty was breached. This perplexity unfolds when the final element required to establish a premises liability claim is added: the sixth element the plaintiff must prove is that the defect in the building was "unreasonably dangerous." Id. at 183.

Determining whether a building defect is "unreasonably dangerous" requires another complex balancing test called the "risk-utility" analysis. It consists of four factors: "(1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of its social utility or whether it is dangerous by nature." Id. at 184.

The difficulty of this "risk-utility" analysis is fitting it into the overall "duty-risk" analysis. For example, does the "risk-utility" analysis answer the question of whether a duty is owed, or does it answer the question of whether a duty was breached? The nuances of this distinction are magnified by the Louisiana Supreme Court's decision in Broussard v. State ex. Rel. Office of State Buildings, 2012-1238 (La. 4/15/13); 113 So. 3d 175.

In Broussard, the state's high court affirmed a jury's finding that a several-inch offset between the floor of an elevator and the floor of a building's lobby presented an unreasonable risk of harm. Relevant to the risk-utility analysis, the court found that the question of whether a defect is unreasonably dangerous is "a disputed issue of mixed fact and law or policy that is peculiarly a question for the jury or trier of the facts." Id. at 183.

The court explained that the second factor of the risk-utility test, which asks whether a defect is obvious and apparent, goes to the legal question of whether a duty is owed. Id. at 184. "Under Louisiana law, a defendant generally does not have a duty to protect against an open and obvious hazard." Id. The court also acknowledged that its earlier decisions had "conflated the duty and breach elements" of the negligence analysis "by tethering the existence of a duty to a determination of whether a risk is unreasonable." Instead of untethering the two concepts, however, the court then proceeds to obscure the distinctions further.

8

Immediately after concluding that the second element of the risk-utility analysis answers the question of whether a duty is owed, the court declares: "we find the analytic framework for evaluating an unreasonable risk of harm is properly classified as a determination of whether a defendant breached a duty owed, rather than a determination of whether a duty is owed *ab initio*." Id. The court went on, "It is axiomatic that the issue of whether a duty is owed is a question of law, and the issue of whether a defendant has breached a duty is a question of fact." Id. The court reasoned further: "Because the determination of whether a defect is unreasonably dangerous necessarily involves a myriad of factual considerations . . . [the risk-utility analysis] . . . is more properly associated with the breach, rather than the duty, element of our duty-risk analysis." Id. at 185.

Broussard left Louisiana with the following paradoxical principles: 1) Determining whether a duty is owed is a question law to be decided by the Court; 2) No duty is owed if a defect is open and obvious; 3) To determine whether a defect is open and obvious, one must apply the second factor of the risk-utility test; 4) The risk-utility test is used to determine whether a defect is unreasonably dangerous; 5) Determining whether a defect is unreasonably dangerous goes to the factual question of whether a duty was breached. In short, the conundrum is this: one cannot answer the legal question of whether a duty is owed without

answering the factual question of whether a duty was breached. Louisiana premises liability law is hardly a model of clarity.

Two years later, the Louisiana Supreme Court offered "much needed guidance to both the practitioners and the Judiciary of this State on the proper interpretation and application of our holding in Broussard." Allen v. Lockwood, 2014-1724 (La. 2/13/15); 156 So. 3d 650, 651. In Allen, the lower court found that Broussard precluded the possibility of summary judgment in premises liability cases because the question of whether a defect is "unreasonably dangerous" had to be decided by a jury. Rejecting this reading, the Louisiana Supreme Court instructed, "Any reading of *Broussard* interpreting it as a limit on summary judgment practice involving issues of unreasonable risk of harm is a misinterpretation of the *Broussard* case." Id. at 652-53. The court directed attention to its 2014 ruling in Bufkin v. Felipe's Louisiana, 14-0288 (La. 10/15/14); 171 So. 3d 851, to show that summary judgment is proper in premises liability cases. Further, the court in Allen affirmed summary judgment in favor of a church defendant because the alleged defect – an unpaved grassy parking area – was open and obvious. Id. at 653.

In Bufkin, the Louisiana Supreme Court reversed the district court and entered summary judgment in favor of the defendant. The court held that any vision obstruction caused by a dumpster placed on a French Quarter street was open and obvious and thus, the

defendant had no duty to warn the plaintiff who was struck by a bicycle as he crossed the street. Importantly, the court's finding that the obstruction was open and obvious ended the analysis because the defendant owed no duty. This Court applies similar reasoning.

Despite the puzzling instructions announced in Broussard, this Court will progress logically through the duty-risk analysis by asking first whether Caesars owed a duty to Edmison. In doing so, the Court must apply the second factor of the risk-utility analysis and ask whether the alleged defect was open and obvious.

### 1. Caesars' Duty

Louisiana law places a heightened duty of care on escalator owners. The parties agree that Caesars owes "a high degree of care" analogous to the degree of care imposed on common carriers. Broussard, 2012-1238; 113 So. 3d at 186. Included in an escalator owner's duty of care is its duty to discover any unreasonably dangerous condition and to either correct the condition or warn of its existence. See id. at 187. Nonetheless, even the heightened duty of an escalator owner does not extend to protect against open and obvious defects. See id. at 188 ("An elevator owner, being akin to a common carrier, does not, however, insure the safety of every individual who may happen to ride its elevator.").

### A. Open and Obvious

Under Louisiana law, a defendant owes no duty to protect against an open and obvious hazard. Bufkin v. Felipe's Louisiana, 14-0288 (La. 10/15/14); 171 So. 3d 851, 856. A hazard is "open and obvious" if it is open and obvious to everyone who may potentially encounter it. Id. "The open and obvious inquiry thus focuses on the global knowledge of everyone who encounters the defective thing or dangerous condition, not the victim's actual or potentially ascertainable knowledge." Broussard, 2012-1238; 113 So. 3d at 188.

B.

The only defect that the plaintiffs can identify with the escalator is its lack of certain safety features, particularly step demarcation lines. The plaintiffs contend that the "defect" is not open and obvious because, without demarcation lines, it is difficult to see where the steps of the escalator separate. The yellow step demarcation lines are designed to help riders determine where one step ends and the other begins. Without these lines, the plaintiffs urge that the separating steps on the escalator are the opposite of open and obvious. The plaintiffs misconstrue the test.

Because the escalator had no ostensible defects, the plaintiffs are relegated to attempt to prove a negative: that the *absence* of safety features was *not* open and obvious. Aside from being untrue – it is obvious that the escalator steps had no yellow demarcation lines – the plaintiffs' argument perverts the open and obvious inquiry. The separating steps on the escalator are not the

12

complained of condition; all escalator steps separate. The alleged defect is that the escalator created an unsafe risk of falling due to the absence of safety features. Thus, the proper question is whether the danger of riding an escalator without such features is open and obvious. The Court's answer is yes.

It is no secret that the steps on an escalator move and eventually separate as they begin to go up or down.[2] Anyone of ordinary prudence knows to pay attention when stepping on or off an escalator. It is obvious and apparent that if one fails to look down to see where the escalator steps are separating, one may fall.[3] Even holding Caesars to a "high degree of care," "[t]he owner of a building is not responsible for all injuries resulting from any risk posed by the building." Broussard, 2012-1238; 113 So. 3d at 183. Using a normally-operating escalator, like using stairs or crossing the street, poses inherent, yet obvious risks. Even with its heightened standard of care, Caesars does not have a duty to add any and all safety features that may or may not prevent injury.

2. Unreasonably Dangerous

Although the Court finds that Caesars owed no duty to add the safety features advanced by the plaintiffs, the Court also finds

---

[2] The plaintiffs admit that escalators and moving walks are the most frequently used mode of transportation in the world.
[3] The plaintiffs also admit that falls are the leading cause of escalator accidents.

as a matter of law that the escalator was not unreasonably dangerous. The undisputed facts are as follows:

The escalator was in compliance with the relevant safety codes. It was operating normally; it was not malfunctioning. It is clear from the video footage that many people used the escalator without hazard in the minutes immediately before the plaintiff's fall. Both plaintiffs testified that they were frequent visitors of Harrah's Casino and had used the tunnel escalators perhaps 100 times before without incident. Caesars estimates that 600,000 people used the escalator in the six month period before the plaintiff's fall. There were three reported accidents during that time.[4]

Applying the remaining risk-utility factors,[5] the Court finds that the escalator was not unreasonably dangerous. The social utility of escalators is high: in an age of skyscrapers, shopping malls, and international airports, there is no doubt that escalators greatly increase mobility for millions of people. The probability of falling on Caesar's escalator is low: three

---

[4] Caesars contends that none the accidents were caused by the absence of safety upgrades. Yet the plaintiffs submit an affidavit of Jay Mayhall, who claims he fell down a Harrah's Casino escalator during the early morning hours of June 12, 2015. He, too, admitted that he had been drinking alcohol.

[5] The factors are: (1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of its social utility or whether it is dangerous by nature.

14

accidents out of 600,000 passengers in six months amounts to a distant fraction of a percent. The cost of adding safety features to one escalator may not be burdensome, but the precedent of a favorable finding for the plaintiffs could be incalculable: if Caesars were required to implement all newly developed, noncompulsory safety features for every escalator in all of its casinos, the cost would likely be exorbitant. Finally, the most unreasonably dangerous conduct on this record is the plaintiff's own heavy alcohol consumption. Being highly intoxicated (above the legal limit for driving) is, in itself, inherently dangerous. Especially in light of his age and health condition, Edmison's own conduct before riding the escalator was risky, with little to no social utility. Caesars' motion for summary judgment is granted.

IV.

Schindler Elevator Corporation also moves for summary judgment.

The plaintiffs' negligence claim against Schindler arises from Louisiana Civil Code article 2315: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." The Court must again apply Louisiana's "duty-risk" analysis. The precise elements of a negligence claim, however, differ from the elements of a premises liability claim.

In the context of a negligence claim, the Louisiana Supreme Court breaks down the duty-risk analysis into five essential

elements that the plaintiffs must prove: 1) the defendant had a duty to conform his conduct to a specific standard of care; 2) the defendant failed to conform his conduct to the appropriate standard; 3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; 4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and 5) actual damages. Mathieu v. Imperial Toy Corp., 94-0952 (La. 11/30/94); 646 So. 2d 318, 322. The Court addresses the parties' contentions with regard to each element.

### 1. Schindler's Duty

The parties agree that Schindler owed a duty of reasonable care to maintain and service the escalator under its contract with Caesars. See Rabito v. Otis Elevator Co., 93-1001 (La. App. 4 Cir. 12/15/94); 648 So. 2d 18, 19.

### 2. Breach of Duty

Schindler contends that there is no competent evidence in the record to suggest that its maintenance, design, or construction of the escalator fell below the standard of reasonable care. Schindler points out that the escalator complied with the relevant safety codes and was operating normally at the time of the accident. The plaintiffs do not contest these facts; however, they urge that Schindler should have recommended safety upgrades to Caesars. According to the plaintiffs, step demarcation lines are a required safety feature for all escalators installed after 2002. Caesars'

escalator was not required to have the demarcation lines because it was installed in 2000. The plaintiff contends, "If Schindler wanted the Harrah's escalators to be as safe as possible, it should have recommended the installation of step demarcation lines."

Schindler's duty is not to ensure that Harrah's escalators are as safe as possible. Its duty is to exercise reasonable care in the maintenance and service of the escalators. The escalator complied with the safety requirements and was not malfunctioning at the time of the accident. These facts are undisputed. Schindler did not breach its duty of reasonable care.

### 3. Cause-in-Fact and Legal Cause

Although the plaintiffs' failure to establish a breach of duty precludes their negligence claim, the Court also finds that the plaintiffs are unable to establish causation.

"To meet the cause-in-fact element, a plaintiff must prove only that the conduct was a necessary antecedent of the accident, that is, but for the defendant's conduct, the incident probably would not have occurred." Hendrickson v. Guillory, 2008-0930 (La. App. 4 Cir. 5/18/09); 15 So. 3d 256, 254 (citing Roberts v. Benoit, 605 So. 2d 1032 (La. 1991). It is virtually impossible for the plaintiffs to prove that, if the proposed safety features had been in place, the heavily-intoxicated Mr. Edmison would not have fallen down the escalator. The plaintiffs can only speculate. Indeed, Mr. Edmison testified that he has no memory of what caused the fall.

Legal cause, which Louisiana also refers to as the scope of the duty, "is ultimately a question of policy as to whether the particular risk falls within the scope of the duty." Id. "The critical test in Louisiana is phrased in terms of the 'ease of association' which melds policy and foreseeability into one inquiry: Is the harm which befell the plaintiff easily associated with the type of conduct engaged by the defendant?" Id. As a policy matter, the reasonable duty of care imposed on Schindler cannot include preventing a highly intoxicated passenger from falling down a code-compliant, normally-operating escalator. Mr. Edmison's intoxication level is undisputed. The risk he took by riding an escalator while heavily inebriated exceeds the scope of protection Schindler was duty-bound to provide.

Accordingly, IT IS ORDERED that Schindler Elevator Corporation's motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that Caesars Entertainment Operating Company and Jazz Casino Company's motion for summary judgment is GRANTED.

The plaintiffs' claims are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, April 6, 2016

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE